**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JAMES C. WHITE, | § | |
| (TDCJ-CID #470285) | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-09-2734 |
| | § | |
| FRANCISCO BRIONES, *et al.*, | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM AND OPINION**

The plaintiff, James C. White, an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), alleges that officers of the Houston Police Department ("HPD") subjected him to an excessive use of force during his arrest. This court ordered service of process on Officer Francisco Briones and the City of Houston. (Docket Entry No. 7). On August 19, 2010, Officer Briones and the City moved for summary judgment. (Docket Entry No. 19). White filed a response. (Docket Entry Nos. 26, 27, 29). Based on the pleadings, the motions, the summary judgment record, and the applicable law, this court grants in part and denies in part the motion for summary judgment. The reasons for these rulings are stated below.

## I.    The Legal Standards

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'– that is, pointing out to

the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss,* 389 F.3d 142, 149-50 (5th Cir. 2004). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000); *Anderson,* 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary

2

judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994).  When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.   Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential

to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

The individual defendant raises the defense of qualified immunity.  When an official pleads this defense, the plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Mitchalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005) (citing *Brazan v. Hidalgo Cnty.,* 246 F.3d 481, 489 (5th Cir. 2001)).  When the individual defendant seeks summary judgment based on qualified immunity, the plaintiff cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact about the reasonableness of the official's conduct.  *Mitchalik,* 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof, but must offer more than "mere allegations.") (quotation omitted).

White proceeds *pro se*.  Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those filed by attorneys.  *See Haines v. Kerner*, 404 U.S. 519 (1972). Pleadings filed by a *pro se* litigant are liberally construed, *see Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dep't*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)), but "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se* parties are held to 'less stringent standards than

4

formal pleadings drafted by lawyers,' *pro se* parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment.").

## II.     The Summary Judgment Record

### A.     White's Allegations and Summary Judgment Evidence

White alleges that on May 30, 2008, he was at a convenience store talking to a woman.  He saw two HPD officers approach in a patrol vehicle and began to run because he had not reported to his parole officer for over two years.  White states that he tried to hide in horse stables behind the convenience store.  Officer Francisco Briones and his partner (later identified as Officer Guillermo Lopez) found him and ordered him to come out from the stables with his hands up.  White states that he complied and Officer Briones placed him in handcuffs.

According to White, as he walked with the officers toward the patrol vehicle, he asked Officer Briones to loosen the handcuffs.  White alleges that when he asked again, Officer Lopez grabbed his legs and arms and both officers "slammed" him to the ground.  White denies walking away from the officers, attempting to escape after being handcuffed, fighting with the officers, exposing the officers to bodily fluids, or threatening to inflict harm.

The officers took White to the hospital, where he received five stitches in his left ear.  He was then taken to the City jail, where he was charged with failure to identify (Cause Number 152927001010), evading arrest (Cause Number 152926901010), and assault (Cause Number 152937501010).  On June 2, 2008, the failure to identify charge was dismissed.  White was convicted of evading arrest and received a sentence of thirty days in jail. On August 18, 2008, the assault charge was dismissed.

White states that he had to return to the hospital five times to be treated for a broken jaw. He still has pain in his head and jaw.  White seeks payment of his medical expenses in the amount of $21,269.25 and compensatory damages of $250,000.00.

White submitted the following documents with his response to this court's order for a more definite statement:

(A)     a facsimile dated December 29, 2009 from the Harris County Hospital District to White about payment for medical services;

(B)     a copy of a letter from the City of Houston to White dated August 6, 2009; and

(C)     a copy of a letter from the City of Houston to White dated August 26, 2009 stating that White's claims for damages against the City were barred.

**B.     The Defendants' Summary Judgment Evidence**

In support of their motion for summary judgment, (Docket Entry No. 19), the defendants have filed the following exhibits:

(A)     an affidavit by Officer Francisco Briones;

(B)     an affidavit by Officer Guillermo Lopez;

(C)     an affidavit by HPD Sergeant E.M. Sotuyo;

(D)     a Houston Fire Department Incident Report dated May 30, 2008; and

(E)     an excerpt from the City of Houston Charter, Article IX, Section 11.

In his affidavit, Officer Briones stated as follows:

> I currently hold the rank of Police Officer with the City of Houston's Houston Police Department ("HPD"). I have been a Police Officer with the City of Houston for approximately nine (9) years. I am currently assigned to the South Central Division, South Patrol Command. I have personal knowledge of the facts stated in this Affidavit.

6

I have reviewed the Plaintiff's Complaint and/or statements on file in this lawsuit. As a part of my duties with the Northeast Patrol, I patrol certain areas of Houston, and I was on patrol at the time of this alleged incident. I am a certified Texas peace officer, and I was a certified officer at the time of the alleged incident.

On May 30, 2008, I was working with Officer Lopez when I first identified Mr. White as a suspect at the 8200 block of East Houston. I was told by Winifred Murray that Mr. White had assaulted her.

Once Mr. White saw Officer Lopez and I direct our attention towards him, he ran from the location before we could detain him.

Mr. White ran eastbound on Green River and across Mesa to the 8000 block of Mesa. Officer Lopez and I chased Mr. White in our patrol vehicle to the 8000 block of Mesa.  We stopped the vehicle in a parking lot of a convenience store, and we chased after Mr. White on foot behind the store. Mr. White jumped over several fences, and both Mr. White and I ended up in a horse stable/field. Mr. White ran approximately two hundred yards when I caught up to him. Mr. White was hiding in a horse stable until he realized that I had discovered his location.

He ran out of the horse stable a short distance and then stopped turning around to face me. Mr. White took a combative stance with his knees slightly bent and his body in a crouch position. I observed both of Mr. White's hands clenched in fists with his hands directly in front of him, very similar to the stance a boxer would take.

I gave Mr. White a verbal command to get on the ground.  He disregarded my order and continued in his hostile body position.  At this point I extended my asp baton and again ordered Mr. White to get down on the ground.  Mr. White's hands were still clenched in fists, he refused to get on the ground, and he continued in his combative stance.

Mr. White then walked towards me in this stance, and I ordered him to step back and get on the ground.  Again, he disregarded my verbal commands and showed no intention of lowering his clenched fists at the sight of my asp baton. Based on all of my observations at the scene and of Mr. White, I reasonable[sic] believed that he intended to assault me.  Fearing imminent injury since Mr. White was in close-enough proximity to strike me, and it appeared that he would strike me with his fist(s), I executed a defensive strike with my asp baton

to clear his hands. At that moment Mr. White suddenly crouched lower in his body position and my asp baton struck Mr. White along the left side of his face, rather than at his hands/ fists.  I then attempted to handcuff him while on the ground but he continued to struggle. Officer Lopez arrived and assisted.

After Officer Lopez and I placed Mr. White in handcuffs and walked him to the patrol vehicle, he attempted to pull away from us by swinging his body to break our hold on him. Officer Lopez and I were able to keep Mr. White from breaking free, but we were forced to place Mr. White on the ground and wait for additional units for assistance.

We were able to detain Mr. White with the assistance of other officers on the scene. While Mr. White was sitting in the patrol vehicle, he moved his handcuffed arms from behind his back to the front of him. I, along with other officers, took Mr. White out of the patrol vehicle to once again handcuff Mr. White, with his hands behind his back.  During this entire time, Mr. White was very belligerent and continued to be verbally aggressive towards officers and me.  Additionally, Mr. White was uncooperative and combative with the HPD ambulance personnel on the scene and because of this Officer Lopez and I transported Mr. White to Lyndon B. Johnson Hospital.

During the time of Mr. White's arrest, he was very belligerent, aggressive, angry, and was yelling and refusing to comply with orders given by officers.

At no time during Mr. White's arrest did Officer Lopez or I "slam" Mr. White on the ground. We did place Mr. White on the ground, but in no manner did we "slam" or "throw" Mr. White on the ground.

From my initial contact with Mr. White to the point of taking him out of the patrol vehicle to readjust his handcuffs, Mr. White was combative, uncooperative, and refused police orders given to him. It was clear that Mr. White did not want to be arrested and he showed this by evading arrest. Once I was caught up to Mr. White in the horse field/ stable I was alone because Officer Lopez had not yet made it into the area.    I used only the necessary and reasonable amount of force and one defensive strike as described above. It is my strong belief that if Mr. White would have simply complied with my commands and gotten on the ground, Officer Lopez and I would have placed Mr. White under arrest without incident or injury.

8

Through this entire incident I did not observe any other officer at any time use any type of unnecessary or unreasonable force against Plaintiff White. The only force used, and as described above, was the minimum and necessary force for officer safety and to affect the arrest and control of Plaintiff White.

In this incident there was clearly reasonable suspicion to detain Plaintiff White and probable cause to affect his arrest because Winifred Murray had described how Mr. White had assaulted her by punching her several times in the face.

At no time during this incident did I use excessive force. At no time during this incident did I observe any HPD officer, including Officer Lopez use excessive force. Throughout this incident I acted as a reasonable and prudent police officer and based on my observations of the entire scene and unfolding events, Officer Lopez also acted as a reasonable and prudent police officer.

Based on my training as a police officer, my experience, and my observations at the time of this alleged incident, it is my opinion that I was justified in the actions I took. I was in reasonable fear for my safety and possibly for my life. It is my opinion that no police officer could have believed that she/he would not have been justified in striking Plaintiff one time with the asp baton as described above.

At no time during this incident did I act with malice, ill will or with a wanton indifference or with deliberate disregard for Plaintiff White's statutory and/or constitutional rights.

At no time during this incident did I violate Plaintiff White's statutory or constitutional rights.

At no time during this incident did I intentionally inflict emotional distress, verbally or physically abuse Plaintiff White or violate Plaintiff White's Fourth, Fifth, and/or Eighth Amendments to the Constitution of the United States.

I did not commit any improper and/or unconstitutional act during the incident made the basis of this lawsuit, and no reasonable police officer under the circumstances made the basis of this suit could have believed that my actions were unconstitutional, improper, unreasonable, excessive, or done with ill will, indifference and/or wanton disregard for Plaintiff[']s constitutional and/or statutory rights.

9

Likewise, I did not see any HPD officer, including Officer Lopez, violate Plaintiff White's constitutional and/or statutory rights, including but not limited to Plaintiff's Fourth, Fifth and/or Eighth Amendment Rights. I also did not see any HPD officer, including Officer Lopez act with ill will, malice, deliberate indifference, or deliberate disregard to Plaintiff's[sic] White's constitutional and/or statutory rights.

Based on my training, experience, and education, I am familiar with the practices and policies of the Houston Police Department ("HPD") as they relate to Plaintiff's allegations.

HPD does not have any policy, practice or custom which allows its police officers to use excessive or unreasonable force. In fact when a claim of excessive or unreasonable force is made as in this case, HPD's Internal Affairs Division investigates those claims.

Likewise HPD does not have any police[sic], practice or custom which allows its police officers to violate a citizen or suspect's constitutional rights or act with ill will, malice or deliberate indifference when coming into contact with citizens and/or suspects. These claims are likewise investigated.

All allegations of material facts contained herein are true and correct and are within my personal knowledge.

(Docket Entry No. 19, Defendants' Motion for Summary Judgment, Ex. A, pp. 1-7).

In his affidavit, Officer Lopez testified:

I currently hold the rank of Police Officer with the City of Houston's Houston Police Department ("HPD"). I have been a Police Officer with the City of Houston for approximately eight (8) years. I am currently assigned to the Northeast Division, North Patrol Command, and I have been with the Northeast Patrol for my entire tenure at HPD. I have personal knowledge of the facts stated in this Affidavit.

I have reviewed the Plaintiff's Complaint and/or statements on file in this lawsuit. As a part of my duties with the Northeast Patrol, I patrol certain areas of Houston, and I was on patrol at the time of this alleged incident. I am a certified Texas peace officer, and I was a certified officer at the time of the alleged incident.

On May 30, 2008, I was working with Officer Briones. On our way back to the station from an investigation, two men stopped us and stated that a woman had been assaulted. The woman's clothes were in disarray, she was crying, and she informed Officer Briones and I that Plaintiff White had punched her several times in the face. After Plaintiff White was pointed out to us and identified as the one who assaulted this female, suspect White took off running. We gave chase down East Houston Road and Mesa Drive.

Plaintiff White entered a fenced area with a stable, and Officer Briones chased him into the stable area. I stayed on the south side of the fence, in case Plaintiff White doubled-back. Plaintiff White ran from Officer Briones, towards me, but when he saw me waiting, he ran back towards the north. I heard Officer Briones giving suspect White verbal commands to get on the ground. I ran around the horse stables and observed Officer Briones struggling on the ground with suspect White and giving him verbal commands to put his hands behind his back. I ran to assist Officer Briones in placing handcuffs on suspect White. Suspect White continued to refuse our verbal commands and continued resisting us. Officer Briones and I were able to place the handcuffs on suspect White.

While we were walking suspect White back to the patrol car, I was maintaining control of suspect White by holding onto the back of his pants. Once he saw the patrol car he jerked away and spun around in an attempt to flee again.

We were able to maintain some control over Plaintiff and placed him into the back of the patrol car. Mr. White stated that he was going to pull his handcuffs to the front, and he was told not to do so. Despite that instruction, Plaintiff White stepped through his handcuffs, and we had to remove him from the patrol car, for officer, as well as prisoner, safety. This was in order to re-secure the handcuffs behind Plaintiff White.  Plaintiff White again attempted to flee, but we got him to the ground, and with the assistance of another officer, we re-secured Plaintiff White's handcuffs to the back.

The Houston Fire Department responded and Plaintiff White became combative with them. Officer Briones and I took Plaintiff White to the Lyndon B. Johnson Hospital, rather than escort him in an ambulance. We waited with Plaintiff White as he saw the doctor, and we transferred custody of him to other officers who relieved us.

11

Suspect White refused to comply with the verbal commands of Officer Briones and me to stop when he was evading on foot. Once we had suspect White on the ground he continued to refuse to comply with our verbal commands, to squirm and resist in an attempt to get away from us.

At no time during the incident, did I make any baton strikes on suspect White, nor did I see any officer make any baton strikes on suspect White. Officer Briones advised me, after we got control of and had handcuffed Plaintiff White, that he was forced to use a single baton strike to protect himself and gain control of suspect White before I could arrive to help him place Mr. White in custody.

Throughout the incident Plaintiff White was upset, belligerent, aggressive, and refused to cooperate with the officers at the scene.

I did not observe any other officer at any time use any type of unnecessary or unreasonable force against Plaintiff White.

Throughout the entire incident the only force used, and as described above, was the minimum and necessary force for officer safety and to affect the arrest and control of Plaintiff White. Had Plaintiff White merely cooperated, no force would have been necessary or used.

In this incident there was clearly reasonable suspicion to detain Plaintiff White and probable cause to affect his arrest. At all times while Officer Briones and I were attempting to detain, and/or arrest Plaintiff White, he refused to cooperate and was combative and aggressive.

At no time during this incident did I use excessive force. At no time during this incident did I observe any HPD officer, including but not limited to Officer Briones, use excessive force. Throughout this incident I acted as a reasonable and prudent police officer and based on my observations of the entire scene and unfolding events, Officer Briones acted as a reasonable and prudent police officer.

Based on my training as a police officer, experience, and observations at the time of this incident, it is my opinion that I was justified in the actions I took, and Officer Briones was justified in the actions he took. It is also my opinion that no police officer could have believed that she/he would not have been justified in taking those same acts as we did while attempting to detain arrest and get control of Plaintiff White during this incident.

12

At no time during this incident did I act with malice, ill will or with a wanton indifference or with deliberate disregard for Plaintiff White's statutory and/or constitutional rights.

At no time during this incident did I violate Plaintiff White's statutory or constitutional rights.

At no time during this incident did I intentionally inflict emotional distress, verbally or physically abuse Plaintiff White or violate Plaintiff White's Fourth, Fifth, and/or Eighth Amendments to the Constitution of the United States.

I did not commit any improper and/or unconstitutional act during the incident made the basis of this lawsuit, and no reasonable police officer under the circumstances made the basis of this suit could have believed that my actions were unconstitutional, improper, unreasonable, excessive, or done with ill will, indifference and/or wanton disregard for Plaintiff's constitutional and/or statutory rights.

Likewise, I did not see any HPD officer, including Officer Briones, violate Plaintiff White's constitutional and/or statutory rights, including but not limited to Plaintiff's Fourth, Fifth and/or Eighth Amendment Rights. I also did not see any HPD officer, including Officer Briones, act with ill will, malice, deliberate indifference, or deliberate disregard to Plaintiffs[sic] White's constitutional and/or statutory rights.

Based on my training, experience, and education, I am familiar with the practices and policies of the Houston Police Department ("HPD") as they relate to Plaintiff's allegations.

HPD does not have any policy, practice or custom which allows its police officers to use excessive or unreasonable force. In fact when a claim of excessive or unreasonable force is made, as in this case, HPD's Internal Affairs Division investigates those claims.

Likewise HPD does not have any police[sic], practice or custom which allows its police officers to violate a citizen or suspect's constitutional rights or act with ill will, malice or deliberate indifference when coming into contact with citizens and/or suspects. These claims are likewise investigated.

All allegations of material facts contained herein are true and correct and are within my personal knowledge.

13

(Docket Entry No. 19, Defendants' Motion for Summary Judgment, Ex. B, pp. 1-6).

The defendants also submitted an affidavit of Sergeant E.M. Sotuyo, stating as follows:

> I currently hold the rank of Police Sergeant with the City of Houston's Houston Police Department ("HPD"). I have been a Police Officer/Sergeant with the City of Houston for approximately twelve (12) years. I am currently assigned to the Internal Affairs Division. I have personal knowledge of the facts stated in this Affidavit.
>
> I have reviewed the Plaintiff[']s Complaint and/or statements on file in this lawsuit. As a part of my duties as sergeant with the Northeast Patrol at the time of this incident, I was one of the sergeants over that area. I made the scene of this incident, and I was one of the supervisors of Officer Briones. I am a certified Texas peace officer, and I was a certified officer at the time of the alleged incident.
>
> I first became aware of this incident when Sergeant Musick called me and I responded to the scene. When I first observed the suspect, James White, in custody at the gas station on Mesa Road, he was sweating, belligerent, and not answering questions regarding his identity, while in custody in the back seat of a patrol car. I personally asked him for information, name, date-of-birth, address, etc. He refused. Throughout the entire incident, James White was very uncooperative. He refused in providing his information, and I was later advised that the information he did provide was actually his brother's information, which the offense report originally listed as his information.
>
> The only use of force that I observed used against suspect James White was reasonable and necessary and occurred when Mr. White was removed from the marked police car to replace his handcuffs from the front position to the proper position behind his back. Mr. White continued to struggle once one handcuff was removed and I participated in taking him to the ground to reapply the handcuffs behind his back. I recall assisting Officer Lopez in taking the suspect, James White, to the ground, but I do not recall if any other officer or sergeant assisted in this action. This is the only use of force that I witnessed. I was debriefed that prior to my arrival, suspect, James White, had already evaded arrest, failed to follow commands, and failed to surrender to arrest. It was deemed by all present police personnel that he needed to be properly secured with handcuffs behind the back. Since he refused to cooperate and was aggressive and combative, minimum and necessary force was required in order

to properly handcuff and control Mr. White. The proper handcuffing, requiring hands behind the back, is for the safety of the officers, citizens, and the suspect.

At no time did James White make any complaint of injury to me nor did I [sic] him complain of any pain or injury.

I never observed the suspect, James White, being "slammed" to the ground. He was struggling while his handcuffs were being replaced, and he was taken to the ground but certainly not slammed or thrown in any unreasonable or excessive manner to the ground.

After the incident, I filed the charges and completed a supplementary report to the original offense report. I completed an additional supplementary report and modified the suspect screen to reflect the suspect James White's true information.

I did not make any baton strikes on suspect White, nor did I see any officer make any baton strikes on suspect White.

Throughout the incident Plaintiff White appeared upset and was belligerent, aggressive, and refused to cooperate with the officers at the scene.

I did not observe any other officer at any time use any type of unnecessary or unreasonable force against Plaintiff White.

Throughout the entire incident the only force used, and as described above, was the minimum and necessary force for officer safety and to affect the arrest and control of Plaintiff White. Had Plaintiff White merely cooperated, no force would have been necessary.

At no time during this incident did I use excessive force. At no time during this incident did I observe any HPD officer, including but not limited to Officer Briones, use excessive force. Throughout this incident I acted as a reasonable and prudent police officer and sergeant.

Based on my training as a police officer/sergeant, my experience, and my observations at the time of this alleged incident, it is my opinion that I was justified in the actions taken.

At no time during this incident did I act with malice, ill will or with a wanton indifference or with deliberate disregard for Plaintiff White's statutory and/or constitutional rights.

At no time during this incident did I violate Plaintiff White's statutory or constitutional rights.

At no time during this incident did I intentionally inflict emotional distress, verbally or physically abuse Plaintiff White or violate Plaintiff White's Fourth, Fifth, and/or Eighth Amendments to the Constitution of the United States.

I did not commit any improper and/or unconstitutional act during the incident made the basis of this lawsuit, and no reasonable police officer under the circumstances made the basis of this suit could have believed that my actions were unconstitutional, improper, unreasonable, excessive, or done with ill will, indifference and/or wanton disregard for Plaintiff's constitutional and/or statutory rights.

Likewise, I did not see any HPD officer, including Officer Briones, violate Plaintiff White's constitutional and/or statutory rights, including but not limited to Plaintiffs Fourth, Fifth and/or Eighth Amendment Rights. I also did not see any HPD officer, including Officer Briones act with ill will, malice, deliberate indifference, or deliberate disregard to Plaintiff's[sic] White's constitutional and/or statutory rights.

It is my opinion that the use of force or use of the baton to strike a suspect who is refusing commands to back away and get on the ground and who is coming toward an officer in a crouching, aggressive manner with closed fists in a boxer-like stance is reasonable when that officer is in fear of his life and safety.   It is my opinion that a reasonable police officer would be in fear of his life and safety when confronted with the description and actions of Mr. White as described by Officer Briones.

Based on my training, experience, and education, I am familiar with the practices and policies of the Houston Police Department ("HPD") as they relate to Plaintiff's allegations.

HPD does not have any policy, practice or custom which allows its police officers to use excessive or unreasonable force. In fact when a claim of excessive or unreasonable force is made, as in this case, HPD's Internal Affairs Division investigates those claims.

16

> Likewise HPD does not have any police[sic], practice or custom which allows its police officers to violate a citizen or suspect's constitutional rights or act with ill will, malice or deliberate indifference when coming into contact with citizens and/or suspects. These claims are likewise investigated.
>
> All allegations of material facts contained herein are true and correct and are within my personal knowledge.

(Docket Entry No. 19, Defendants' Motion for Summary Judgment, Ex. C, pp. 1-6).

The individual defendants assert their entitlement to qualified immunity on the grounds that White has failed to allege a constitutional violation and that the defendants' actions were objectively reasonable in light of clearly established law. The defendants' motion and the summary judgment evidence are analyzed under the applicable law.

## III.     The Claims Against Officer Briones in his Individual Capacity

### A.     Qualified Immunity

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights that a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). A state actor is entitled to qualified immunity if his conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his actions. *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004).

A two-step process has traditionally been used in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). A court first considers whether "the facts alleged

show the officer's conduct violated a constitutional right," then decides whether the right at issue

was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 201.  The Supreme

Court has held that a case may be dismissed based on either step in the qualified immunity analysis.

*Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

**B.     The Excessive Force Claim**

The Fourth Amendment guarantees the right to be free from unreasonable searches and

seizures. "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it

merely proscribes those which are unreasonable."  *See, e.g., Florida v. Jimeno,* 500 U.S. 248, 250

(1991) (citing *Illinois v. Rodriguez,* 497 U.S. 177 (1990)).  Reasonableness is measured "in objective

terms by examining the totality of the circumstances."  *Ohio v. Robinette,* 519 U.S. 33, 39 (1996).

White alleges that officers violated his Fourth Amendment rights by using excessive force

to restrain him during his arrest.  The elements of a § 1983 claim for excessive use of force during

an arrest are (1) an injury that (2) resulted directly and only from the use of force that was excessive

to the need and that (3) the force used was objectively unreasonable.  Excessive-force determinations

do not involve "easy-to-apply legal test[s]."  *Scott v. Harris,* 550 U.S. 372, 383-84 (2007).   The

Supreme Court has described the inquiry as a "slosh . . . through the factbound morass of

'reasonableness.'" *Id.* at 383.  But it is clear that a court may not apply hindsight to second-guess

an officer's conduct.  *Hill v. Carroll Cnty., Miss.,* 587 F.3d 230, 234 (5th Cir. 2009) (citing *Graham*

*v. Conner,* 490 U.S. 386, 396-97 (1989)).  A court must consider only the information available to

the officers at the time.  "The 'reasonableness' of a particular use of force must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Connor,* 490 U.S. at 396.  A court must also recognize that officers often must make split-second

18

decisions in stressful situations.  *Id.*  Finally, officers cannot be personally liable unless the law at the time clearly established that the use of force was unreasonable.  *Id.*

There are two questions in analyzing an excessive force claim.  One is whether certain facts, taken as true, were constitutionally unreasonable as a matter of law.  The second is whether the facts asserted actually occurred.  Whether a given course of conduct is constitutionally unreasonable is a legal question.  Whether that course of conduct actually happened is a fact question.  *Kinney v. Weaver,* 367 F.3d 337, 346 (5th Cir. 2004) (en banc).  Genuine disputes over material facts preclude summary judgment.

### C.    Analysis

White argues that while he was handcuffed, Officer Briones and his partner violently threw him to the ground.  White contends that when that occurred, he was in full compliance with all police orders and was offering no resistance.  White acknowledges that he initially ran from the officers and attempted to hide, but asserts that he complied with the officers' orders to come out with his hands in the air and submitted to the handcuffs.  White maintains that at no point did he struggle with the officers or offer any resistance.  At the patrol vehicle, White asked, for a second time, whether the officers would loosen the handcuffs, and tried to go down on one knee.  White states that when he did so, Officers Briones and Lopez grabbed him by the legs and arms and "slammed" him on the ground.  White states that he received five stitches in his left ear and treatment for a broken jaw.  (Docket Entry No. 29, Plaintiff's Response, p. 3).  White offers a fax dated December 29, 2009 sent by the Harris County Hospital District.  The document, a bill, shows that White had some type of dental surgery on July 3, 2008.  (Docket Entry No. 6, Plaintiff's More Definite

Statement, Ex. A, pp. 2-3). White states that efforts to get copies of his medical records were unsuccessful.

The defendants offer a very different version of the arrest. The affidavits of the three officers involved show that White was extremely belligerent and that the force used was necessary to restrain him. The affidavits state that Officers Briones and Lopez chased White on foot after receiving a complaint that he had assaulted a woman. They discovered him hiding in the horse stables. Officer Briones stated that when White ran out of the stables, he faced Officer Briones and assumed a combative stance with clenched fists. The officers gave White several orders to lie down, which White ignored. Officer Briones thought that White was about to begin a fist fight with him and used his ASP baton to clear White's clenched fists. White unexpectedly crouched lower and the baton hit the left side of White's face. White continued to struggle as Officer Briones tried to place him in handcuffs. With Officer Lopez helping, Officer Briones was able to apply the handcuffs and move White toward the patrol car. As they approached the patrol vehicle, White tried to break free. Officer Briones and Officer Lopez placed White on the ground to maintain control over him and placed him in the patrol car. Once in the car, White stepped through the handcuffs and succeeded in moving his hands from behind his body to the front. Officer Lopez removed White from the patrol vehicle to make sure that he was handcuffed behind his body. The officers testified that White continued to struggle. Officer Lopez and Sergeant Sotuyo placed White on the ground to secure the handcuffs.

There is no dispute that Officer Briones used force against White. The question is whether, from the perspective of a reasonable officer on the scene, the force used was excessive to the need and therefore objectively unreasonable.

20

The evidence supporting the reasonableness of the police response is disputed.  White asserts that he offered no resistance at any point after he exited the stables when ordered to do so.  The officers assert that throughout the arrest, White was belligerent, aggressive, and refused to comply with orders.  White testified that he was injured when Officers Briones and Lopez violently "slammed" him to the ground while he was handcuffed and complying with orders.  The officers testified that White was injured when Officer Briones used a baton in a reasonable response to White's refusals to obey orders to lie down on the ground and his clear indications that he was about to strike Officer Briones with closed fists.  The officers deny that White was "slammed" to the ground and instead testified that they placed him on the ground in a reasonable effort to subdue his resistance.

Pointing to the medical record and their sworn version of the facts, the defendants may argue that White's version is so contrary to the evidence that it may be ignored under *Scott v. Harris,* 550 U.S. 372 (2007).  The plaintiff's version of events in *Scott* was contradicted by a contemporaneous videotape of the relevant events.  *See* 550 U.S. at 380-81.  The Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.  Here, the parties' affidavits and sworn pleadings contradict each other.  There is no record showing that on the night of the incident, White was treated for a broken jaw, as he contends.  But there is no evidence similar to the videotape in *Scott* to resolve the disputed facts.  Conflicting affidavits are not enough to invoke the *Scott* exception to the general rule that on summary judgment, the evidence must be viewed in the light most favorable to the nonmovant.  *See Sanchez v. Fraley,* No. 09-50821, 2010 WL 1752123, at *4-5

21

(5th Cir. Apr. 30, 2010) (finding that *Scott* did not allow the court to disregard conflicting deposition testimony).  While the absence of contemporaneous medical records are relevant to whether White's version of the facts is credible, credibility determinations are inappropriate on summary judgment. *Tarver v. City of Edna,* 410 F.3d 745, 753 (5th Cir. 2005).  And the Supreme Court has made clear that the excessive force inquiry focuses on the force exerted, not on the extent of the injury sustained. *See Wilkins,* 130 S. Ct. at 1179 & n.2.

White has presented sufficient summary judgment evidence to create a genuine issue of material fact as to the circumstances that led to the defendants' use of force against him in May 2008.  White has raised disputed fact issues material to determining whether the "officers' actions were clearly unreasonable, in light of clearly established law at the time, and in light of the information the officer[ ] possessed." *Wagner v. Bay City, Tex.,* 227 F.3d 316, 321 (5th Cir. 2000). Officer Briones is not entitled to judgment as a matter of law on White's excessive force claim.

## IV.     The Claims Against the City of Houston

### A.     The Legal Standard

White has sued both the City of Houston and Officer Briones in his official capacity. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 690 n.55 (1978)).  A suit against a government official in his official capacity is the same as a suit against the entity the official represents. *Graham*, 105 S. Ct. at 3105.  The claims by White against Officer Briones in his official capacity are dismissed because they are the same as the claims against the City of Houston.

A city may not be held liable under § 1983 on a theory of liability for the acts of others, such as police officers.  Instead, a city may only be liable for its own acts or acts that are directly attributable to it "through some official action or imprimatur."  *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).  To hold a city liable under § 1983 for the misconduct of an employee such as a police officer, a plaintiff must show, in addition to a constitutional violation, that an official policy by the city's policymaker was the moving force behind, or actual cause of, the constitutional injury.  *Id.*  The official policy itself must be unconstitutional or adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Johnson v. Deep East Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir. 2004); *see also Piotrowski,* 237 F.3d at 579.

An official policy usually exists in the form of written statements, ordinances, or regulations, but it may also take the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy."  *Piotrowski,* 237 F.3d at 579 (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).  A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy."  *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989).  The "policy maker" prong is satisfied if actual or constructive knowledge of a policy is attributable to the municipality's governing body or to an official to whom the municipality has delegated policy making authority.  *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (*en banc*).  Presumptive policymakers for a police department include the mayor, the city counsel and the chief of police. *Id.*

A policy must be the moving force behind the constitutional violation. *Piotrowski,* 237 F.3d at 580 ("In addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation.") (citing *Monell,* 436 U.S. at 694). A plaintiff must show "a direct causal link" between the policy and the violation. *Id.* A plaintiff must also show that, if an official policy is not facially unconstitutional, it was adopted "with 'deliberate indifference' as to its known or obvious consequences.'" *Johnson,* 379 F.3d at 309; *see also Piotrowski,* 237 F.3d at 579. Deliberate indifference is beyond negligence or even gross negligence; it "must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cnty.,* 973 F.2d 386, 392 (5th Cir. 1992); *see also Conner v. Travis Cnty.,* 209 F.3d 794, 796 (5th Cir. 2000).

### B.    Analysis

In its motion for summary judgment, the City of Houston argues that White has failed to allege or identify any evidence of a City custom, policy, or practice that was the driving force behind the alleged use of excessive force. (Docket Entry No. 19, pp. 6-8). The summary judgment record includes the officers' affidavits. Each testified that HPD does not have any policy, practice or custom which allows its police officers to use excessive or unreasonable force or to act with malice in encounters with suspects. The officers also stated that when a claim of excessive or unreasonable force is made, HPD's Internal Affairs Division investigates. (Docket Entry No. 19, Defendants' Motion for Summary Judgment, Exs. A, p. 7, B, p. 6).

White has not responded to this evidence with any showing of an official policy or custom that was the moving force behind, or actual cause of, the constitutional injury. White also fails to present or point to any evidence that the City of Houston failed to adequately train or supervise its

officers. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). For "liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.* at 391. A plaintiff must prove an affirmative answer to the question, "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id.* "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *Id.* at 389. The Fifth Circuit has extended *City of Canton* to cover a plaintiff's allegations that the municipality failed properly to discipline its employees. *See Piotrowski v. City of Houston,* 237 F.3d 567, 581 (5th Cir. 2001) ("[s]elf-evidently, a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens."). White has not presented or identified evidence of training or supervision deficiencies that were the moving force behind the use of excessive force. *Hinojosa v. Butler,* 547 F.3d 285 (5th Cir. 2008). There is no evidence in the record giving rise to a genuine fact issue as to whether the City of Houston's custom or policy of inadequate training caused his injuries. *Deville v. Marcantel,* 567 F.3d 156 (5th Cir. 2009). The City of Houston is entitled to judgment as a matter of law.

## V.     Conclusion

The motion for summary judgment filed by Officer Briones and City of Houston (Docket Entry No. 19), is granted, in part, and denied, in part. White's claims against the City of Houston are dismissed with prejudice. White's excessive force claims against Officer Briones are retained

for further proceedings.  White's motion for the appointment of counsel, (Docket Entry No. 30), is

granted.  By separate order, this court will appoint counsel and set a status conference.

SIGNED on January 7, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge