**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JAMES C. WHITE, | § | |
| (TDCJ-CID #470285) | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-09-2734 |
| | § | |
| FRANCISCO BRIONES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, James C. White, an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), alleges that officers of the Houston Police Department ("HPD") used excessive force during his arrest. On January 7, 2011, this court ruled on the summary-judgment motion filed by Officer Francisco Briones and the City of Houston. (Docket Entry No. 19). This court dismissed White's claims against the City of Houston, with prejudice, retained White's excessive-force claims against Officer Briones for further proceedings, and appointed counsel for White. (Docket Entry No. 35). After discovery, Officer Briones filed a second motion for summary judgment. (Docket Entry No. 59). White filed a response through his counsel. (Docket Entry No. 61). Based on the pleadings, the motions, the summary-judgment record, and the applicable law, this court denies Officer Briones's second motion, for the reasons stated below. A status conference is set for **March 18, 2013,** at 1:30 p.m. in Courtroom 11–B.

**I.     The Legal Standards**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss,* 389 F.3d 142, 149-50 (5th Cir. 2004). When ruling on a motion for summary judgment, the court is required to view all

2

facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson,* 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586 (1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on pleading allegations. The nonmovant must identify specific evidence in the record. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

Briones raises the defense of qualified immunity. When an officer pleads this defense, the plaintiff must show that the officer's allegedly wrongful conduct violated federally protected rights. *See Mitchalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005) (citing *Brazan v. Hidalgo Cnty.,* 246 F.3d 481, 489 (5th Cir. 2001)). When the individual defendant seeks summary judgment based on qualified immunity, the plaintiff cannot rest on conclusory allegations and assertions but must

identify a basis to support an inference that the officer used constitutionally excessive force. *Mitchalik,* 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof," but must offer more than "mere allegations.") (quotation omitted).

## II. The Record

### A. The Allegations in White's Complaint

This court previously summarized White's allegations as follows:

> White alleges that on May 30, 2008, he was at a convenience store talking to a woman. He saw two HPD officers approach in a patrol vehicle and began to run because he had not reported to his parole officer for over two years. White states that he tried to hide in horse stables behind the convenience store. Officer Francisco Briones and his partner (later identified as Officer Guillermo Lopez) found him and ordered him to exit the stables with his hands up. White states that he complied, and Officer Briones placed him in handcuffs.
>
> According to White, as he walked with the officers toward the patrol vehicle, he asked Officer Briones to loosen the handcuffs. He alleges that when he asked again, Officer Lopez grabbed White's legs and arms, and both officers "slammed" him to the ground. White denies walking away from the officers; attempting to escape after being handcuffed; fighting with the officers; exposing the officers to bodily fluids; or threatening to inflict harm.
>
> The officers took White to the hospital, where he received five stitches in his left ear. He was then taken to the City jail, where he was charged with failure to identify (Cause Number 152927001010), evading arrest (Cause Number 152926901010), and assault (Cause Number 152937501010). On June 2, 2008, the failure to identify charge was dismissed. White was convicted of evading arrest and received a sentence of thirty days in jail. On August 18, 2008, the assault charge was dismissed.
>
> White states that he had to return to the hospital five more times to be treated for a broken jaw and that he still has pain in his head and jaw. White seeks payment of his medical expenses in the amount of $21,269.25 and compensatory damages of $250,000.00.

(Docket Entry No. 35, pp. 5-6).[1]

### B. The Summary-Judgment Evidence

White has submitted the following summary-judgment evidence:

    (A)    excerpts from his June 1, 2012 deposition;

    (B)    excerpts from Briones's deposition; and

    (C)    White's medical records from May 30 to September 30, 2008.

Briones filed the following:

    (A)    his own affidavit;[2]

    (B)    excerpts from White's deposition; and

    (C)    an affidavit by Samuel Neal, an eyewitness.

In his deposition, White testified that on May 30, 2008, he had been violating the terms of his parole for two and one-half years. He ran when he saw the patrol car and the officers pursued

---

[1] White described the use of force in his complaint and more definite statement. (Docket Entry No. 6). White's sworn declarations are competent summary judgment evidence because they comply with 28 U.S.C. § 1746. Under this statute:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same, [ ] such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated[.]

28 U.S.C. § 1746.

[2] Officer Briones previously submitted this affidavit in support of his first motion for summary judgment. (Docket Entry No. 19, Exh. A).

him on foot. White hid in a horse stable for a few minutes and then heard an officer order him to come out. White testified that he came out, turned around, handcuffed, and walked to the patrol vehicle. White denied ever assuming a boxer-like stance or offering any resistance. As he was being escorted to the patrol vehicle, White asked the officers to loosen the handcuffs. The officer did not so do.

Once in the patrol vehicle, White was able to move his handcuffed wrists from the back to the front of his body. The officers ordered White to get out of the vehicle. White obeyed. The officers reapplied the handcuffs behind White's back. White testified that while he was kneeling down, both officers picked him up by his legs and arms, slammed him to the ground, and broke his jaw.

White was taken to the hospital that night. He received five stitches in his ear. He later had surgery to reset his jaw.

In his affidavit, Officer Briones stated as follows:

> I currently hold the rank of Police Officer with the City of Houston's Houston Police Department ("HPD"). I have been a Police Officer with the City of Houston for approximately nine (9) years. I am currently assigned to the South Central Division, South Patrol Command. I have personal knowledge of the facts stated in this Affidavit.
>
> I have reviewed the Plaintiff's Complaint and/or statements on file in this lawsuit. As a part of my duties with the Northeast Patrol, I patrol certain areas of Houston, and I was on patrol at the time of this alleged incident. I am a certified Texas peace officer, and I was a certified officer at the time of the alleged incident.
>
> On May 30, 2008, I was working with Officer Lopez when I first identified Mr. White as a suspect at the 8200 block of East Houston. I was told by Winifred Murray that Mr. White had assaulted her.

Once Mr. White saw Officer Lopez and I direct our attention towards him, he ran from the location before we could detain him.

Mr. White ran eastbound on Green River and across Mesa to the 8000 block of Mesa. Officer Lopez and I chased Mr. White in our patrol vehicle to the 8000 block of Mesa. We stopped the vehicle in a parking lot of a convenience store, and we chased after Mr. White on foot behind the store. Mr. White jumped over several fences, and both Mr. White and I ended up in a horse stable/field. Mr. White ran approximately two hundred yards when I caught up to him. Mr. White was hiding in a horse stable until he realized that I had discovered his location.

He ran out of the horse stable a short distance and then stopped turning around to face me. Mr. White took a combative stance with his knees slightly bent and his body in a crouch position. I observed both of Mr. White's hands clenched in fists with his hands directly in front of him, very similar to the stance a boxer would take.

I gave Mr. White a verbal command to get on the ground. He disregarded my order and continued in his hostile body position. At this point I extended my asp baton and again ordered Mr. White to get down on the ground. Mr. White's hands were still clenched in fists, he refused to get on the ground, and he continued in his combative stance.

Mr. White then walked towards me in this stance, and I ordered him to step back and get on the ground. Again, he disregarded my verbal commands and showed no intention of lowering his clenched fists at the sight of my asp baton. Based on all of my observations at the scene and of Mr. White, I reasonable[sic] believed that he intended to assault me. Fearing imminent injury since Mr. White was in close-enough proximity to strike me, and it appeared that he would strike me with his fist(s), I executed a defensive strike with my asp baton to clear his hands. At that moment Mr. White suddenly crouched lower in his body position and my asp baton struck Mr. White along the left side of his face, rather than at his hands/ fists. I then attempted to handcuff him while on the ground but he continued to struggle. Officer Lopez arrived and assisted.

After Officer Lopez and I placed Mr. White in handcuffs and walked him to the patrol vehicle, he attempted to pull away from us by swinging his body to break our hold on him. Officer Lopez and I were able to keep Mr. White from breaking free, but we were forced

to place Mr. White on the ground and wait for additional units for assistance.

We were able to detain Mr. White with the assistance of other officers on the scene. While Mr. White was sitting in the patrol vehicle, he moved his handcuffed arms from behind his back to the front of him. I, along with other officers, took Mr. White out of the patrol vehicle to once again handcuff Mr. White, with his hands behind his back. During this entire time, Mr. White was very belligerent and continued to be verbally aggressive towards officers and me. Additionally, Mr. White was uncooperative and combative with the HPD ambulance personnel on the scene and because of this Officer Lopez and I transported Mr. White to Lyndon B. Johnson Hospital.

During the time of Mr. White's arrest, he was very belligerent, aggressive, angry, and was yelling and refusing to comply with orders given by officers.

At no time during Mr. White's arrest did Officer Lopez or I "slam" Mr. White on the ground. We did place Mr. White on the ground, but in no manner did we "slam" or "throw" Mr. White on the ground.

From my initial contact with Mr. White to the point of taking him out of the patrol vehicle to readjust his handcuffs, Mr. White was combative, uncooperative, and refused police orders given to him. It was clear that Mr. White did not want to be arrested and he showed this by evading arrest. Once I was caught up to Mr. White in the horse field/ stable I was alone because Officer Lopez had not yet made it into the area. I used only the necessary and reasonable amount of force and one defensive strike as described above. It is my strong belief that if Mr. White would have simply complied with my commands and gotten on the ground, Officer Lopez and I would have placed Mr. White under arrest without incident or injury.

Through this entire incident I did not observe any other officer at any time use any type of unnecessary or unreasonable force against Plaintiff White. The only force used, and as described above, was the minimum and necessary force for officer safety and to affect the arrest and control of Plaintiff White.

In this incident there was clearly reasonable suspicion to detain Plaintiff White and probable cause to affect his arrest because

8

Winifred Murray had described how Mr. White had assaulted her by punching her several times in the face.

At no time during this incident did I use excessive force. At no time during this incident did I observe any HPD officer, including Officer Lopez use excessive force. Throughout this incident I acted as a reasonable and prudent police officer and based on my observations of the entire scene and unfolding events, Officer Lopez also acted as a reasonable and prudent police officer.

Based on my training as a police officer, my experience, and my observations at the time of this alleged incident, it is my opinion that I was justified in the actions I took. I was in reasonable fear for my safety and possibly for my life. It is my opinion that no police officer could have believed that she/he would not have been justified in striking Plaintiff one time with the asp baton as described above.

At no time during this incident did I act with malice, ill will or with a wanton indifference or with deliberate disregard for Plaintiff White's statutory and/or constitutional rights.

At no time during this incident did I violate Plaintiff White's statutory or constitutional rights.

At no time during this incident did I intentionally inflict emotional distress, verbally or physically abuse Plaintiff White or violate Plaintiff White's Fourth, Fifth, and/or Eighth Amendments to the Constitution of the United States.

I did not commit any improper and/or unconstitutional act during the incident made the basis of this lawsuit, and no reasonable police officer under the circumstances made the basis of this suit could have believed that my actions were unconstitutional, improper, unreasonable, excessive, or done with ill will, indifference and/or wanton disregard for Plaintiff[']s constitutional and/or statutory rights.

Likewise, I did not see any HPD officer, including Officer Lopez, violate Plaintiff White's constitutional and/or statutory rights, including but not limited to Plaintiff's Fourth, Fifth and/or Eighth Amendment Rights. I also did not see any HPD officer, including Officer Lopez act with ill will, malice, deliberate indifference, or deliberate disregard to Plaintiff's[sic] White's constitutional and/or statutory rights.

> Based on my training, experience, and education, I am familiar with the practices and policies of the Houston Police Department ("HPD") as they relate to Plaintiff's allegations.
>
> HPD does not have any policy, practice or custom which allows its police officers to use excessive or unreasonable force. In fact when a claim of excessive or unreasonable force is made as in this case, HPD's Internal Affairs Division investigates those claims.
>
> Likewise HPD does not have any police[sic], practice or custom which allows its police officers to violate a citizen or suspect's constitutional rights or act with ill will, malice or deliberate indifference when coming into contact with citizens and/or suspects. These claims are likewise investigated.
>
> All allegations of material facts contained herein are true and correct and are within my personal knowledge.

(Docket Entry No. 59, Defendant's Motion for Summary Judgment, Ex. 1, pp. 1-7).

In his deposition, Officer Briones testified that he and his partner were in their patrol vehicle when a woman, Winefred Murray, stopped them. Murray reported that she had been assaulted and pointed toward a man, later identified as White. The officers started following White in their patrol vehicle. Officer Briones saw White jump over a fence. Briones got out of his vehicle and followed White. Briones saw White run out of a horse stable and stop in an open area. Officer Briones ordered White to lie down on the ground. Briones was then standing four or five feet from White. Briones testified that White assumed a combative stance, balled his hands into fists, and came toward Briones. Officer Briones believed that White was going to strike him and used his baton to try to open White's hands. Officer Briones testified that instead, his baton hit the left side of White's face, and White fell to the ground. Officer Briones then tried to place handcuffs on White, but White struggled. Officer Lopez came to help. Once White was cuffed, the three walked to the

patrol car. Officer Briones saw a cut on White's left ear but not on his jaw. White did not make any complaints about his jaw.

As noted, White disputed much of Briones's testimony. In particular, White denied that he resisted after emerging from the stables. He also denied that Briones used a baton at any time.

In his affidavit, Samuel Neal testified that he saw the police follow White behind a barn. He saw the officers detain White, place him in handcuffs, and escort him to a patrol vehicle. Neal saw that White's ear was bleeding. He saw the officers place White in the patrol vehicle, then take him out of the vehicle, place him on the ground, and reapply the handcuffs. Neal did not see the officers "knock" or "slam" White to the ground. (Docket Entry No. 59, Defendant's Motion for Summary Judgment, Ex. 3, pp. 1-2).

Officer Briones asserts that he is entitled to summary judgment on qualified immunity because White has failed to allege a constitutional violation and Briones's actions were objectively reasonable in light of clearly established law.

## IV.   The Claims Against Officer Briones in his Individual Capacity

### A.   Qualified Immunity

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages if a reasonable official in similar circumstances could not understand that his conduct violated clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). A state actor is

entitled to qualified immunity if his conduct was objectively reasonable in light of the legal rules that were clearly established at the time. *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004). A two-step process is used to evaluate qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). One step is to consider whether "the facts alleged show the officer's conduct violated a constitutional right." The other step is to decide whether law in place when the acts occurred clearly established that the acts violated that law. *Id*. at 201. Either step may be done first, and either may suffice for dismissal. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

      **B.**    **The Claim of Excessive Force**

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. "The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *See, e.g., Florida v. Jimeno,* 500 U.S. 248, 250 (1991) (citing *Illinois v. Rodriguez,* 497 U.S. 177 (1990)). Reasonableness is measured "in objective terms by examining the totality of the circumstances." *Ohio v. Robinette,* 519 U.S. 33, 39 (1996). White alleges that officers violated his Fourth Amendment rights by using excessive force during his arrest. The elements of a § 1983 claim for excessive use of force during an arrest are "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id.*

As the Supreme Court stated in *Graham v. Connor,* "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395. The determination of "reasonableness" under the Fourth Amendment is "not capable of precise definition or mechanical application . . . [but] requires careful attention to the facts and

12

circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation omitted). The Court explained that "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

Excessive-force determinations do not involve "easy-to-apply legal test[s]." *Scott v. Harris,* 550 U.S. 372, 383-84 (2007). The Supreme Court has described the inquiry as a "slosh . . . through the factbound morass of 'reasonableness.'" *Id.* at 383. But it is clear that a court may not apply hindsight to second-guess an officer's conduct. *Hill v. Carroll Cnty., Miss.,* 587 F.3d 230, 234 (5th Cir. 2009) (citing *Graham v. Conner,* 490 U.S. 386, 396-97 (1989)). A court must consider only the information available to the officers at the time. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Connor,* 490 U.S. at 396. A court must also recognize that officers often must make split-second decisions in stressful situations. *Id.* Finally, officers cannot be personally liable unless the law at the time clearly established that the use of force was unreasonable. *Id.*

There are two questions in analyzing an excessive-force claim. One is whether certain facts, taken as true, were constitutionally unreasonable as a matter of law. The second is whether the facts asserted actually occurred. Whether a given course of conduct is constitutionally unreasonable is a legal question. Whether that course of conduct actually happened is a fact question. *Kinney v. Weaver,* 367 F.3d 337, 346 (5th Cir. 2004) (en banc). Genuine disputes over material facts preclude summary judgment.

13

**C.     Analysis**

White argues, and presents evidence, that Officer Briones and his partner violently threw him to the ground while he was handcuffed. White also points to evidence showing that when that occurred, he was in full compliance with all police orders and was offering no resistance. White acknowledges that he initially ran from the officers and attempted to hide. But he asserts that he complied with the officers' orders to come out with his hands in the air, submitted to handcuffs, and cooperatively got into the patrol vehicle.

White points to summary-judgment evidence showing that after he asked the officers to loosen his handcuffs, and after he moved his cuffed arms from his back to his front, Briones and Lopez grabbed him by the legs and arms and "slammed" him on the ground. On July 3, 2008, Dr. Nagi Demian performed surgery on White's jaw. Dr. Demian's diagnosis was that White had an "untreated left mandibular angle fracture." (*Id.* at 109).

Officer Briones offers evidence that presents a starkly different account. According to Briones, White was extremely belligerent and the force used was necessary to restrain him. Officer Briones testified that he confronted a man who ran, then assumed a combative stance with clenched fists and approached menacingly. Officer Briones thought that White was about to begin a fist fight. Briones used his ASP baton to clear White's hands, but White unexpectedly crouched and the baton hit the left side of his face. White continued to struggle as Briones tried to place him in handcuffs. With Lopez, Briones was able to apply the handcuffs and move White toward the patrol car. As they approached the patrol vehicle, White tried to break free. Briones and Lopez placed White on the ground to control him and then placed him in the patrol car. Once in the patrol vehicle, White stepped through the handcuffs and succeeded in moving his hands from behind his body to the front.

14

Lopez removed White from the patrol vehicle to make sure that he was handcuffed behind his body. The officers testified that White continued to struggle. Lopez and Sergeant Sotuyo placed White on the ground to secure the handcuffs.

There is no dispute that Briones used force that broke White's jaw. There is no dispute that White initially fled when he saw the police officers, because he had failed to report to his parole officer for over two years. It is also undisputed that White hid from the pursuing police in a horse stable. It is undisputed that after White was in custody and cuffed, he moved his handcuffed arms from behind him to in front. Briones argues that White's testimony demonstrates that he had no intention of cooperating with police and that he was likely to make another attempt to escape. Briones relies on his own testimony that because White was belligerent and appeared ready to fight, Briones used his baton, intending to hit White on the hand but accidentally striking his head with the baton. According to Briones, it was reasonable for the officers to assume that when White knelt to be rehandcuffed, he could try to flee again, justifying Officer Briones's preventive measure of placing him on the ground. Briones denies "slamming" White to the ground. Briones argues that the eyewitness account that White was not "slammed" to the ground after being handcuffed supports granting summary judgment.

In deciding a summary-judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The fact disputes disclosed in the present record are genuine in that the evidence would permit a reasonable factfinder to return a verdict for White. The disputes are material, in that resolution of the issues might affect the outcome of the suit under governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir. 1999). The Fifth Circuit

prohibits summary judgment when "the credibility of key witnesses loom[s] . . . large." *Thomas v. Great Atl. & Pac. Tea Co.,* 233 F.3d 326, 331 (5th Cir. 2000).

The evidence supporting the reasonableness of the police response is clearly disputed. White asserts that he offered no resistance at any point after he exited the stables when ordered to do so. The officers assert that throughout the arrest, White was belligerent, aggressive, and refused to comply with orders. White testified that he was injured when Officers Briones and Lopez violently "slammed" him to the ground while he was handcuffed and complying with orders. The officers testified that White was injured when Officer Briones used a baton in a reasonable response to White's belligerence, refusals to obey orders to lie down on the ground, and indications that he was about to strike Officer Briones with closed fists. The officers deny that White was "slammed" to the ground and instead testified that they placed him on the ground in a reasonable effort to subdue his resistance.

White has presented sufficient summary-judgment evidence to create genuine disputes of facts material to determining what happened and whether the use of force was unconstitutional. White has raised factual disputes material to determining whether the "officers' actions were clearly unreasonable, in light of clearly established law at the time, and in light of the information the officer[ ] possessed." *Wagner v. Bay City, Tex.,* 227 F.3d 316, 321 (5th Cir. 2000). Officer Briones is not entitled to summary judgment on White's excessive-force claim.

Officer Briones's motion for summary judgment is denied.

## V.  Conclusion

The second motion for summary judgment filed by Officer Briones, (Docket Entry No. 59), is denied.  White's excessive force claims against Officer Briones are retained for further proceedings.  Officer Briones's motion to substitute redacted copy for the unredacted copy of exhibit 3, (Docket Entry No. 60), is granted.

A status conference is set for on **March 18, 2013,** at 1:30 p.m. in Courtroom 11–B.

SIGNED on February 27, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge